UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY LIDE,<br><br>　　　　Petitioner,<br><br>　　　　v.<br><br>CALIFORNIA REHABILITATION CENTER,<br><br>　　　　Respondent. | NO. CV 12-3514 AGR<br><br>OPINION AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

On April 23, 2012, Petitioner filed a petition for writ of habeas corpus in this court and raised two grounds. Respondent filed an answer, and Petitioner filed a reply. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 2, 10.)

**I.**

**SUMMARY OF STATE COURT PROCEEDINGS**

On October 25, 2010, Petitioner pleaded no contest to possession for sale of cocaine base, possession of a firearm by a felon, carrying a loaded firearm, transportation of a controlled substance and possession of cocaine base while armed with a handgun. (Lodged Document ("LD") 5 at 7.) Petitioner pleaded no contest to the allegations that counts 1 and 4 involved cocaine base, and that he

was personally armed with a firearm. (*Id.*)  Petitioner admitted a prior strike and three prior prison terms. (*Id.* at 8.)  Petitioner's pleas were made in exchange for a sentence of 10 years in prison at half time from the court. (*Id.* at 2, 10; LD 6.)  Petitioner did not appeal.

On February 14, 2011, Petitioner filed a habeas petition before the Los Angeles County Superior Court, which denied it. (LD 7- 8.)  On April 21, 2011, Petitioner signed a habeas petition before the Los Angeles County Superior Court, which denied it. (LD 9-10.)  On May 11, 2011, Petitioner filed a third habeas petition before the Los Angeles County Superior Court. (LD 11.)  The Superior Court denied the petition in a written opinion. (LD 12.)

On August 15, 2011, Petitioner filed a habeas petition before the California Court of Appeal, which summarily denied it. (LD 14.)  On October 4, 2011, Petitioner filed a habeas petition before the California Supreme Court, which denied it with citations to *In re Dixon*, 41 Cal. 2d 756, 759 (1953), and *In re Lindley*, 29 Cal. 2d 709, 723 (1947). (LD 16.)  This action followed.

## II.

## **STANDARD OF REVIEW**

A federal court may not grant a petition for writ of habeas corpus by a person in state custody with respect to any claim that was adjudicated on the merits in state court unless it (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Harrington v. Richter*, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011).

"'[C]learly established Federal law' . . . is the governing legal principle or principles set forth by the Supreme Court at the time the state court rendered its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed.

2

2d 144 (2003). Clearly established federal law includes only the holdings, as opposed to the dicta, of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014).

A state court's decision is "contrary to" clearly established Federal law if (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "'confronts a set of facts . . . materially indistinguishable'" from a decision of the Supreme Court but reaches a different result. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam) (citation omitted). A state court's decision cannot be contrary to clearly established Federal law if there is a "lack of holdings from" the Supreme Court on a particular issue. *Carey v. Musladin*, 549 U.S. 70, 77, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006).

Under the "unreasonable application prong" of section 2254(d)(1), a federal court may grant habeas relief "based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." *Andrade*, 538 U.S. at 76; *see also Rompilla v. Beard*, 545 U.S. 374, 380, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005) ("An 'unreasonable application' occurs when a state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of petitioner's case.") (citation and some quotation marks omitted).

"In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003). "The state court's application must have been 'objectively unreasonable.'" *Id.* at 520-21 (citation omitted).

"Under § 2254(d), a habeas court must determine what arguments or theories supported or, [in the case of an unexplained denial on the merits], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are

3

inconsistent with the holding in a prior decision of this [Supreme] Court." *Richter*, 131 S. Ct. at 786. "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

In applying these standards, this court looks to the last reasoned State court decision. *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006). To the extent no such reasoned opinion exists, as when a state court rejected a claim without explanation, this court must conduct an independent review to determine whether the decisions were contrary to, or involved an unreasonable application of, "clearly established" Supreme Court precedent. *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir.), *cert. denied*, 134 S. Ct. 514 (2013); *Haney v. Adams*, 641 F.3d 1168, 1171 (9th Cir. 2011). If the state court declined to decide a federal constitutional claim on the merits, this court must consider that claim under a *de novo* standard of review rather than the more deferential "independent review" of unexplained decisions on the merits. *Cone v. Bell*, 556 U.S. 449, 472, 129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) (standard of *de novo* review applicable to claim state court did not reach on the merits).

**III.**

**DISCUSSION**

The California Supreme Court denied the habeas petition based on a

procedural bar. (LD 16); *Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000). This court applies *de novo* review.

## A.     GROUND ONE:  Denial of Suppression Motion

Petitioner argues that the trial court improperly denied his motion to suppress the evidence found during a search and seizure without a warrant. (Petition at 5; LD 2.)

The trial court conducted an evidentiary hearing on the suppression motion. (LD 3.) Officer Scaccia testified that on March 11, 2010, he observed a 1991 Chevy Blazer make a right turn without using a right-hand turn signal in violation of Cal. Veh. Code § 22107. Police followed the vehicle and ran the license plate. Before the police received any information on the license plate, the vehicle pulled to a curb in front of a fire hydrant in a high crime area. The passenger, Petitioner, got out and started walking south although not directly towards the police car.[1] (*Id.* at 4-5, 20.) Petitioner had a phone in his hand. (*Id.* at 13.) Officer Scaccia asked Petitioner if he could pat him down for safety reasons[2] and Petitioner was cooperative. Scaccia felt a heavy metal object in Petitioner's right front jacket pocket and believed it to be a firearm. Scaccia asked Petitioner if there was a gun in his pocket, and Petitioner said "yeah." (*Id.* at 7.) Scaccia's partner retrieved the .25 caliber semiautomatic pistol, which was loaded with one live round in the chamber and one live round in the magazine. (*Id.* at 7-8.) Scaccia found four plastic bundles with an off-white rock-like substance that he believed to be cocaine, and $214 in small bills. Petitioner was

---

[1] Scaccia testified that whenever a passenger gets out of a vehicle in that situation, it could indicate a number of possibilities. For example, the passenger could be attempting an ambush, trying to separate himself from what is inside the vehicle, trying to flee, or just getting out of the car. (LD 3 at 12, 18-19.) Scaccia knew that, two years earlier, two Long Beach police officers were shot in that type of situation except that it was the driver who got out of the car. (*Id.* at 12, 18.)

[2] Scaccia explained that baggy clothing can conceal weapons or other contraband. (LD 3 at 7, 19-20.) Petitioner was wearing a heavy oversized jacket and baggy jeans. (*Id.* at 5.)

arrested. (*Id.* at 9.) The trial court denied the motion to suppress. (LD 4.)

"[W]he[n] the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 481, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976) (footnote omitted). Petitioner had that opportunity. The state court conducted an evidentiary hearing and considered Petitioner's claim.

Moreover, constitutional violations that occurred before Petitioner's plea do not constitute independent grounds for relief. *See Tollett v. Henderson,* 411 U.S. 258, 267, 93 S .Ct. 1602, 36 L. Ed.2d 235 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.");[3] *Ortberg v. Moody*, 961 F.2d 135, 137–78 (9th Cir. 1992) ("Petitioner's nolo contendere plea precludes him from challenging alleged constitutional violations that occurred prior to the entry of that plea."); *Marrow v. United States*, 772 F.2d 525, 527 (9th Cir. 1985) (same).

In addition, Petitioner has not shown that his Fourth Amendment claim is meritorious. *Kimmelman v. Morrison*, 477 U.S. 365, 375, 382, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986).

Petitioner applies an incorrect legal standard. Contrary to Petitioner's argument, a police officer need not have probable cause for the search and need not rule out innocent conduct. "The Fourth Amendment permits brief investigative

---

[3] A limited exception to the rule articulated by *Tollett* is not applicable here. In *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974), the Court held that a defendant's guilty plea did not foreclose a claim of vindictive prosecution because such a claim "went to the very power of the State to bring the defendant into court to answer the charge brought against him."

stops . . . when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014). Although a mere hunch is insufficient, the "reasonable suspicion" standard is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Id.* (citations omitted). "[R]easonable suspicion need not rule out the possibility of innocent conduct.'" *Id.* at 1691 (citation omitted). Petitioner's argument that his conduct is consistent with innocent activity is not dispositive. *See United States v. Sokolow*, 490 U.S. 1, 9-10, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989) (although "[a]ny one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel," "taken together they amount to reasonable suspicion"; "inquiry is not whether conduct is innocent or guilty, but the degree of suspicion that attaches to noncriminal acts").

The question is whether the facts available to the officer at the time of the search or seizure warrant a man of reasonable caution in the belief that the action taken was appropriate. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In a traffic stop setting, the reasonable suspicion standard is met "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009). Officer Scaccia testified that he observed a 1991 Chevy Blazer make a right turn without using a right-hand turn signal in violation of the vehicle code. He followed the vehicle and ran the license plate. Before any information was returned, the car pulled to the curb in front of a fire hydrant in a known high crime area. Petitioner, the passenger, got out of the vehicle and started walking southbound in the general direction of the police car. (LD 3 at 4-5, 20.) Scaccia testified that a passenger who gets out of the car under those circumstances could be attempting an ambush, trying to separate

7

1  himself from what is inside the vehicle, trying to flee, or just getting out of the car.
2  (LD 3 at 12, 18-19.)  Scaccia knew that, two years earlier, two Long Beach police
3  officers were shot in that type of situation except that it was the driver who got out
4  of the car and shot at officers.  (*Id.* at 12, 18.)

5  To justify the search, the police officer must reasonably suspect that the
6  person stopped is armed and dangerous.  *Johnson*, 555 U.S. at 327 (standard
7  applies to traffic stop or pedestrian).  Scaccia testified that Petitioner was wearing
8  a heavy oversized jacket and baggy jeans, which could conceal weapons.  (LD 3
9  at 5, 7, 19-20.)  Scaccia sought to pat him Petitioner down for safety reasons.
10 Scaccia felt a heavy metal object in Petitioner's right front jacket pocket and
11 believed it to be a firearm.  Scaccia asked Petitioner if there was a gun in his
12 pocket, and Petitioner said "yeah."  (*Id.* at 7.)  Scaccia's partner retrieved the .25
13 caliber semiautomatic pistol, which was loaded with one live round in the
14 chamber and one live round in the magazine.  (*Id.* at 7-8.)   This showing is
15 sufficient.  *See Johnson*, 555 U.S. at 334; *Terry*, 392 U.S. at 29-30 (patting
16 outside of clothing does not exceed scope of permissible search).

17 Ground One does not warrant habeas relief.

18 **B.     GROUND TWO:  Ineffective Assistance of Counsel**

19 "The longstanding test for determining the validity of a guilty plea is
20 'whether the plea represents a voluntary and intelligent choice among the
21 alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S.
22 52, 56, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

23 When a petitioner alleges ineffective assistance of counsel during a plea
24 process, the two-part test in *Strickland* applies. *Wright v. Van Patten*, 552 U.S.
25 120, 124, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008); *Hill*, 474 U.S. at 57-58.

26 First, a petitioner must show that counsel's representation fell below an
27 objective standard of reasonableness.  *Id.* at 56, 58.  In the plea context, "the
28 voluntariness of the plea depends on whether counsel's advice 'was within the

8

range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citation omitted). Petitioner bears the burden of showing that his counsel's advice to take the plea was deficient. *Tollett*, 411 U.S. at 267. "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d 251 (2009) (citation omitted). A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (citation omitted). "'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Knowles*, 129 S. Ct. at 1420 (citation omitted). *Strickland* "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Richter*, 131 S. Ct. at 790. "[S]trict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 131 S. Ct. 733, 741, 178 L. Ed. 2d 649 (2011).

Second, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. A petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[4] *Id.*; *see also Premo*, 131 S. Ct. at 745. For example, when counsel's alleged error is failure to advise a defendant of a potential affirmative defense, "the resolution of the 'prejudice' inquiry will depend

---

[4] In *Premo*, the Supreme Court rejected the argument that prejudice may be established if a petitioner shows a reasonable possibility that he would have obtained a better plea agreement but for his counsel's errors. 131 S. Ct. at 745. The Court reiterated that a petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have gone to trial. *Id.* Failure to make that showing forecloses habeas relief. *Id.*

9

largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59. This inquiry is objective. *Id.* at 60. "In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different. This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 791-92 (citation omitted).

A petitioner bears the burden of establishing both components. *Williams*, 529 U.S. at 390-91; *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). A court need not address both deficiency and prejudice if a petitioner makes an insufficient showing on one. *Strickland*, 466 U.S. at 697. "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S. Ct. at 788.

Petitioner argues that defense counsel did not inform him about a direct appeal of the denial of his suppression motion and refused to file a petition for writ of mandate to reverse the denial. Petitioner has not shown that counsel's refusal to file a writ to overturn the denial of the suppression motion (or failure to advise him of his right to appeal that decision) was deficient or caused prejudice.

Given that Petitioner's Fourth Amendment claim is without merit, Petitioner cannot show that his counsel was deficient for refusing to challenge the denial by writ of mandate or other means, or that he was prejudiced.

To the extent Petitioner challenges his counsel's advice to take the plea, Petitioner bears the burden of showing that his counsel's advice was deficient. *Tollett*, 411 U.S. at 267. "In the case of an early plea, neither the prosecution nor

10

the defense may know with much certainty what course the case may take." *Premo*, 131 S. Ct. at 742. "Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified." *Id.* at 741. This court's limited role is to determine "whether there was manifest deficiency in light of information then available to counsel." *Id.* at 741.

Findings made by the judge accepting the plea "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Here, if convicted, Petitioner would receive his second strike[5] and face a maximum sentence of over 20 years. (LD 3 at 2.) Petitioner agreed to plead no contest only if the court agreed to dismiss his prior strike for purposes of sentencing and sentence him to 10 years at half time. (*Id.* at 2-3.) At the plea hearing, Petitioner stated he understood his maximum exposure and also understood that under the plea he would receive a 10-year prison term at half time. (*Id.* at 2, 5-6.) Petitioner understood that he had the

---

[5] Petitioner complains that he was previously told he was facing his third strike. That was true prior to the plea hearing. At the hearing, however, the court dismissed the prior for aggravated assault as an alleged strike. (LD 5 at 2.) That left one prior robbery conviction as a strike. (*Id.*) The court clearly explained to Petitioner that: "You would have to admit the one remaining strike, but I would dismiss it for sentencing purposes. So you would receive 10 years at so-called half-time. . . . Over the D.A. objection, this is being offered. Did you want to settle your case for that, then, sir?" Petitioner responded, "Yes." (*Id.*)

11

right to a jury trial instead. (*Id.* at 6-7.) The court asked whether anyone promised him anything else or threatened him in any way. Petitioner responded, "No." (*Id.* at 7.) Counsel joined in the plea. (*Id.* at 9.) The court found that Petitioner's plea was knowing, intelligent and voluntary. (*Id.*)

As the Supreme Court noted, deference must be accorded to counsel's judgment and perspective when the plea was negotiated and entered. *Premo*, 131 S. Ct. at 742. Defense counsel could reasonably believe that an early plea bargain was in Petitioner's interest. Defense counsel obtained, over the prosecutor's objection, a 10-year at half time as compared with the prospect of a sentence of over 20 years. Petitioner has not established deficiency or prejudice.

Ground Two does not warrant habeas relief.

## IV.

## ORDER

IT IS HEREBY ORDERED that judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: July 29, 2014

ALICIA G. ROSENBERG
United States Magistrate Judge